UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA QUIRALTE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:19-cv-01547-HBK (SS)<br><br>OPINION AND ORDER TO REMAND CASE TO COMMISSIONER[1]<br><br>(Doc. No. 16) |

　　　　Erika Quiralte ("Quiralte" or "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 16, 18-19). For the reasons stated herein, the Court orders this matter REMANDED for further administrative proceedings on Plaintiff's first ground of assigned error only.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

　　　On February 13, 2015, Quiralte protectively filed a Title II application for disability and disability insurance benefits. (AR 223-224). Quiralte followed with an application for

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. § 636(c)(1). (Doc. No.

supplemental security income under Title XVI on February 19, 2015. (AR 225-32). Quiralte's applications were initially denied on September 11, 2015 and denied upon reconsideration on February 23, 2016. (AR 137, 146). Quiralte then requested and received a hearing before Administrative Law Judge Matilda Surh ("the ALJ") on May 14, 2018 where Quiralte appeared. (AR 38-51). However, before her substantive testimony was taken, Quiralte opted to postpone the hearing until she could retain counsel. (*Id*). Quiralte reappeared and testified before the ALJ on September 27, 2018 represented by counsel. (AR 52-78). On October 24, 2018, the ALJ issued her decision finding Quiralte not disabled. (AR 13-29). The Appeals Council denied Quiralte's request for review on August 26, 2019. (AR 1-9). Quiralte thus exhausted her administrative remedies. Quiralte filed the present appeal before this Court on October 30, 2019. (Doc. No. 1).

**A. Hearing Testimony**

Quiralte initially appeared before the ALJ on May 14, 2018 but postponed her testimony until she could retain counsel. (AR 38-51). On September 27, 2018, accompanied by counsel Quiralte reappeared and testified. (AR 53-74). Quiralte affirmed she was a high school graduate and that she held a certificate as a medical office specialist. (AR 56). She detailed how she lives with her three adolescent children at her parent's home and relies on their assistance and government welfare to subsist. (AR 56, 60-61). In her previous job as a grocery store assistant manager, Quiralte oversaw other employees, paid bills and occasionally lifted 15-20 pounds.[2] (AR 57, 59). When Quiralte was a teenager she also worked in retail sales. (AR 58). She also briefly worked as a receptionist in 2016. (AR 58). Quiralte quit the receptionist job and has not worked since because being around others makes her feel like "she can't breathe." (AR 59). Fits of anxiety and dizziness often debilitate Quiralte to the point where she "cannot function" and take care of her kids. (AR 59-60). During these episodes Quiralte takes Ativan which calms her down for approximately 30 minutes. (AR 61). She usually feels fine afterwards but once or twice a week the anxiety and dizziness return and Quiralte must lay in bed until it passes. (AR 63). Her dizziness makes her prone to fainting and she previously has gone to the emergency room following falls.

---

[2] Quiralte's testimony does not specify when she worked at the grocery store or for how long.

(AR 67). She has responded by taking daily prescribed Paxil for three months but has yet to experience any improvement. (AR 61-62). Quiralte also twice attended therapy but didn't enjoy it. (AR 62).

Quiralte also testified that she regularly suffers from crippling migraines which can last for one to two weeks. (AR 67-72). Botox has been intermittently effective at preventing them and she has unspecified "emergency" medication to minimize the pain when they do occur. (AR 68-69). However, the migraines are so debilitating that Quiralte vomits, and although she still takes her kids to school when necessary, most of her time during these migraine episodes she remains in a dark room to avoid light. (AR 70-72). Doctors have run MRIs and other examinations on Quiralte but have yet to identify the cause of the migraines. (AR 71).

Around the house, Quiralte often does laundry, cleans, cooks and helps her children get ready for school without feeling ill. (AR 63, 65-67). Approximately every other day, however, she cannot complete any of those tasks due to severe anxiety and dizziness. (AR 66-67). And when she goes to the grocery store, the mall or to other settings where large groups gather, her symptoms regularly return. (AR 63-64). Quiralte drives when necessary but tries to go to the grocery store early in the morning to avoid crowds. (AR 64). She also walks two blocks to her children's school to attend events but does not linger there longer than needed. (*Id*). For fun Quiralte's family goes to the park but she avoids more confined locales like movie theaters. (AR 65-66).

The vocational expert Robin Scher ("Scher") testified following Quiralte. (AR 74-77). Scher assessed Quiralte's sales position as "light strength level with an SVP of 3" and grocery manager job as "light strength level with an SVP of 6." (AR 74). When presented with hypotheticals meant to mirror Quiralte's capabilities, Scher assessed the hypothetical individual could not perform Quiralte's previous positions due to the required public interaction. (AR 74-75). However, Scher assessed the hypothetical individual could work as a motor vehicle assembler, a medium strength level job with an SVP of 2 with approximately 330,000 jobs nationwide. (*Id*). The hypothetical individual could likewise work as a cleaner, a medium strength level job with an SVP of 1 with 110,000 nationwide positions, or as a photocopying machine operator, a light strength level job with an SVP of 2 with 55,000 positions nationally. (AR 75). However, should

the hypothetical individual require daily scheduled and unscheduled breaks, and miss work at least once a month, Scher testified "they probably wouldn't be able to maintain employment." (AR 75-76). Being off task twenty percent of the day would also likely preclude employment. (AR 76-77).

**B. ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Quiralte met the Social Security Act's insured status requirements through September 30, 2019. (AR 18).
- Quiralte has not engaged in substantial gainful activity since the alleged onset date of June 10, 2014. (AR 18).
- Quiralte's anxiety and migraines are severe impairments. (AR 18-19).
- Quiralte's impairments, individually or combined, did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404 Subpart P Appendix 1. (AR 19-22).
- Quiralte possessed the residual functional capacity to perform "a full range of work at all exertional levels" and Quiralte can "understand, remember and carry out very short and simple instructions; can be punctual, maintain attendance and perform activities within a schedule; can sustain ordinary routines without supervision; can work in coordination with or proximity to others without being distracted by them; and can have occasional public contact." (AR 22-27).
- Quiralte is unable to perform any past relevant work. (AR 27).
- Quiralte was born August 24, 1982, making her a "younger individual." She can speak English and is a high school graduate. (AR 27-28).
- Quiralte is not disabled regardless of her skills' transferability. (AR 28).
- The national economy contains significant numbers of jobs Quiralte can perform. (AR 28).
- Quiralte was not disabled as defined in the Social Security Act on the alleged onset date of June 10, 2014. (AR 29).

///

## II. APPLICABLE LAW

A claimant may seek judicial review of any final decision of the Commissioner of Social Security following a denial of benefits. 42 U.S.C. § 405(g). This Court reviews the Commissioner's final decision under the substantial evidence standard; the decision will be disturbed only if it is not supported by substantial evidence or is based on legal error. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). "'Substantial evidence' means 'more than a scintilla,' but 'less than a preponderance.'" *Smolen*, 80 F.3d at 1279 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) and *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)) (internal citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). But the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Tackett*, 180 F.3d a 1098 (citations omitted). The court "may only consider the reasons provided by the ALJ in the disability determination and 'may not affirm the ALJ on a ground upon which he did not rely.'" *Luther v. Berryhill*, 891 F. 3d 872, 875 (9th Cir. 2018) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.2d at 1038. And it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

///

///

**III.   ANALYSIS**

Quiralte identifies two grounds on appeal:

(1)  the ALJ improperly discounted Quiralte's testimony regarding her migraines and other subjective symptoms; and

(2)  the ALJ improperly discounted the opinion testimony of third-party witness Miguel Samano.  (Doc. No. 16 at 15-21).

**A. The ALJ's Assessment of Quiralte's Migraines and Other Subjective Symptoms**

Quiralte argues the ALJ improperly rejecting her testimony, resulting in an RFC that inadequately accounted for her migraines. (Doc. No. 16 at 15-17). The ALJ determined Quiralte's migraines were a severe impairment that "significantly limit[ed] the claimants ability to perform basic work activities." (AR 18). However, the ALJ concluded Quiralte's testimony about their severity was not "entirely consistent with the medical evidence" on the basis that Botox treatments reduced her headaches severity, duration, and frequency, with their frequency falling from five to three times a week. (AR 23).

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> A September 18, 2014 record contained assessments of headache and syncope (Exhibit 5F, page 54). In addition, a May 29, 2018 record contained diagnoses of chronic migraine, vertigo, bilateral occipital neuralgia, and migraine with vertigo (Exhibit 19F, page 42). Further, the May 29, 2018 record indicated that the claimant had botox injections, which helped and reduced headaches from 5 to 3 days a week and reduced the severity of the headaches (Exhibit 19F, page 41). Also, a July 16, 2018 record indicated the claimant had Botox treatment for migraines, and the claimant reported a good overall benefit, including decreased frequency, severity, and duration of headaches. (Exhibit 19F, page 52)

(AR 23). An ALJ employs a two-step analysis to determine whether to credit a claimant's "testimony regarding subjective pain." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, the ALJ assesses "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

6

symptoms alleged." (*Id.*) (internal quotations omitted).  If this test is met, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." (*Id.*) (internal quotations omitted).[3]  Because the ALJ determined Quiralte's migraines were a severe impairment, and did not find Quiralte was malingering, the Court must consider whether the ALJ offered clear and convincing reasons supported by substantial evidence to discredit Quiralte's subjective testimony.

### 1. Whether Quiralte's Testimony Was Consistent With Medical Records

The ALJ discounted Quiralte's testimony because her "statements concerning the intensity persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 23).  Quiralte described at length her migraine's crippling impact on her life. (AR 68-72).  When present, the migraines often last all day and persist for weeks. (AR 70-71).  During her migraines, Quiralte spends most of her time in dark rooms, does not drive and experiences constant pain and nausea to the point of vomiting. (AR 70-72).  Quiralte takes "emergency" medication to alleviate her symptoms but it only helps "a tiny little bit." (AR 71).  Despite the limitations posed by her migraines Quiralte manages to walk her kids to school because she has no other alternative. (*Id*).  Quiralte's testimony is consistent with her medical records, which demonstrate she repeatedly sought treatment for chronic, severe migraines. (AR 586, 626, 1025, 1299).

The ALJ acknowledged Quiralte's medical records demonstrate chronic migraines. (AR 23).  However, she assessed that Botox injections "helped" and reduced Quiralte's weekly headaches from approximately five to three. (*Id*).  She further cited to the medical records relaying the Botox treatment had reduced the migraines duration and severity. (*Id*).

While the medical records relied on by the ALJ indicate improvements in Quiralte's migraines, the same records nonetheless demonstrate her migraines remained severe.  Quiralte began taking Botox in May 2015. (AR 1299).  In September 2016, Quiralte reported to her doctor

---

[3] The Court notes the Commissioner's objection to this standard for the record.  Doc. No. 18 at 7, fn. 2.

that her headaches had worsened since she began taking Botox. (*Id.*). When Quiralte reported in July 2018 that her migraines had subsided from five days per week to three, her doctor still assessed that she suffered from chronic migraines. (AR 1328, 1330). This report is consistent with Quiralte's testimony before the ALJ in September 2018, where she acknowledged that Botox had improved her migraines but that they nonetheless remained frequent and debilitating. (AR 68-72).

The ALJ must provide clear and convincing reasons for rejecting Quiralte's subjective testimony. The ALJ cited to the medical records which indicate that, despite Botox injections improving her condition, Quiralte continued to experience chronic migraines. (AR 23). The ALJ also cited to medical records where Quiralte presented without a migraine, and other aspects of her health were either unremarkable or good. (AR 24). But "[o]ccasional symptom-free periods ... are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). The Ninth Circuit previously found an ALJ failed to provide substantial evidence to reject a claimant's testimony where their "migraines subsided after taking medication" because "the record as a whole shows [the migraines] were not well controlled." *Costa v. Berryhill*, 700 F. App'x 651, 653 (9th Cir. 2017). Here, similar to *Costa*, the record reflects Quiralte's symptoms ebbed and flowed but also show her migraines recurred within a month-and-a-half and then become frequent and lasted for "a week or two." (AR 68-72). The ALJ pointed to isolated evidence indicating the migraines were mild at times despite other parts of the record indicating the migraines remained severe. The records and Quiralte's testimony instead appear to be largely in sync. The Court finds the ALJ finding that Quiralte's migraines were not as severe or as persistent as Quiralte testified is not supported by substantial evidence.

**2. Whether Quiralte's Activities Were Inconsistent With Her Testimony**

Quiralte next assigns error to the ALJ for concluding her daily activities contradicted her subjective testimony. (Doc. No. 16 at 18). The ALJ cited Quiralte's undertaking of childcare and personal care, her ability to run errands and pay bills, and her ability to socialize, attend events, and walk to school and the park as evidence Quiralte is not "as limited as alleged." (AR 24).

> The claimant's reported activities also do not suggest that she is as limited as alleged. For example, in an April 27, 2015 Function Report, the claimant reported that she takes care of others; has no

> problem with personal care (such as dressing, bathing, feeding herself, or using the toilet); prepares her own meals; drives; shops in stores; and is able to count change (Exhibit 4E, pages 6-8); Also, a July 11, 2015 psychological consultative examination report indicated that the claimant can take care of self-dressing, self-bathing, and personal hygiene; is able to pay bills and handle cash appropriately; is able to go out alone; has reported good relationships with family and friends; and drives (Exhibit 9F, page 6).  The claimant also testified that she goes to school events, goes to the grocery store, gets her kids ready for school, walks her kid to school, cleans, and goes to the park (Hearing Testimony).

(AR 24).  Quiralte's testimony is clear that she is capable of completing some tasks when not suffering from migraines, but when she experiences a migraine her abilities rapidly decline.  (AR 66-72).  Even when not suffering from a migraine, Quiralte testified she is unable to complete these tasks every other day due to severe anxiety and dizziness.  (AR 66-67).  She then relies on her father to carry out these tasks.  (AR 67).  Even when in good health, Quiralte takes steps to minimize the chances of experiencing health episodes, such as avoiding crowded places and going to public places like grocery stores only when they will be least busy, such as the early morning.  (AR 63-66).  Quiralte's claimed symptoms are largely consistent with her activities – she undertook routine household tasks when in good health but relied on others to complete these tasks when suffering from migraines and her anxiety.

It is well established a claimant "need not be completely incapacitated to receive benefits."  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  And the ability to irregularly accomplish daily tasks does not necessarily equate with an ability to work.  *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).  Further, an ALJ must "identify specific symptom testimony" they "found to be inconsistent with [the claimant's] reported activities of daily living."  *Ross v. Berryhill*, 711 F. App'x 384, 386 (9th Cir. 2017); *Drake v. Saul*, 805 F. App'x 467, 469 (9th Cir. 2020).

The ALJ provided clear and convincing reasons based upon substantial evidence for rejecting Plaintiff's subjective testimony concerning her mental impairments, *i.e*. anxiety.  (AR 19-22, 23-24).  The Court thus limits its review to Plaintiff's testimony concerning her limitations due to her migraines and finds error.  An ALJ's conclusions are entitled to deference if they are

1    premised on a rational interpretation. *Burch*, 400 F.3d at 679. The ALJ found Quiralte's reported
2    activities contradicted her symptoms but failed to identify any "specific symptom testimony" to
3    which Quiralte testified that those activities contradicted. (AR 24). The ALJ therefore has not
4    met the threshold under *Ross* to discredit Quiralte's subjective symptoms because of her daily
5    activities. By failing to cite specific testimony, which was discredited by Quiralte's activities,
6    activities which were largely consistent with her testimony that her symptoms intensity varied,
7    the ALJ is not entitled to such deference. The ALJ has therefore failed to make the proper
8    showing to discount Quiralte's testimony concerning her migraines on the basis it was
9    contradicted by her daily activities.

### 3. The ALJ's Errors Regarding the Migraines Was Not Harmless

11   The reasons cited by the ALJ for discrediting Quiralte's testimony were not clear and
12   convincing and supported by substantial evidence. The ALJ therefore improperly rejected
13   Quiralte's subjective testimony concerning her migraines.

14   Upon concluding an ALJ has erred, the court assesses whether that error was "harmless."
15   *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). An ALJ's error is harmless if it
16   "was clear from the record that an ALJ's error was inconsequential to the ultimate nondisability
17   determination." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1169 (9th Cir. 2008)
18   (internal quotations omitted).

19   The rejection of Quiralte's testimony was not harmless. Quiralte testified that she regularly
20   suffers from crippling migraines which can last for one to two weeks. (AR 67-72). Had that
21   testimony been credited, the ALJ may have concluded Quiralte's migraines precluded her from
22   working. Scher, the vocational expert, testified that if an individual with an RFC like Quiralte were
23   to miss more than one day a month for work, or were to need daily scheduled and unscheduled
24   breaks, it is unlikely that individual could remained employed. (AR 75-77). Scher's assessment
25   raises the question whether Quiralte's migraines would cause her to miss at least one day of work
26   per month or force her to take scheduled or unscheduled breaks. This question, unaddressed by the
27   ALJ when calculating Quiralte's RFC, is critical to determining whether Quiralte is eligible for

benefits.[4]  The Court therefore remands this matter to the ALJ to either credit Quiralte's testimony as true or to provide clear and convincing reasons that her testimony concerning her migraines should be discredited.

### B. The ALJ's Assessment of Miguel Samano

Quiralte argues the ALJ erred by "failing to explain how" the assessment of Quiralte's boyfriend, Miguel Samano ("Samano") "was considered or explain why identified limitations were rejected."  (Doc. No. 18 at 19-20).  The Administrative Record includes Samano's witness statement in which he attests that he spent upwards of 8 hours daily with Quiralte and echoes the limitations to which Quiralte testified. (AR 289-295).  Addressing Samano's written statement, the ALJ assigned it "some weight" concerning his direct observation of Quiralte's activities but otherwise gave it "little weight" because Samano is not a medical source and his because his statement lacked specificity regarding how long Quiralte could walk.  (AR 27).

> I also considered the statements of the claimant's boyfriend, Miguel Samano, contained in an April 27, 2015 Third Party Function Report (Exhibit 5E).  Mr. Samano opined that the claimant's condition affects her ability to stand and walk (Exhibit 5E, page 10).  I assign *little weight* to the opinions of Mr. Samano regarding the claimant's functional limitations, *as the record does not indicated [sic] that Mr. Samano is an acceptable medical source qualified to assess functional limitations*.  Additionally, Mr. Samano did not specify how long the claimant can stand (Exhibit 5E, page 10).  Some weight, though, is given to the statements of Mr. Samano regarding the claimant's actual activities, to the extent those statements are based on firsthand observations of the claimant.

(AR 27) (emphasis added).  "[L]ay witness testimony concerning a claimant's ability to work" must be considered by an ALJ in determining whether the claimant is disabled.  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir.2006).  An ALJ must provide "germane" reasons for discounting a witness statement. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Providing a statement limited weight solely because it comes from a lay source is not germane. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  However, a statement can be discounted if it provides a "vague" description of the claimant's limitations.  *Kendall v. Saul*, 2021 WL 736268, at *18 (E.D. Cal. Feb. 25, 2021).

---

[4] The ALJ's decision does not discuss Scher's testimony and thus does not assign it any weight. Quiralte's brief seeking remand does not argue that this omission warrants remand.

The ALJ did not disregard Samano's statement but assigned it "little weight" when considering Plaintiff's functional limitations. According to Samano, Quiralte cannot walk "too far" and often gets dizzy when walking or standing. (AR 294.) How long Quiralte can walk and stand is relevant to developing her RFC and determining what jobs, if any, she can perform. Contending Quiralte cannot walk "too far" provides the ALJ little guidance because "far" is entirely subjective. In finding Samano's testimony to be vague, the ALJ provided a germane reason to discount it. The Court finds the ALJ provided sufficient reasons germane for giving Samano's statement "limited weight." Remand is therefore unwarranted on this basis.

## IV.   CONCLUSION

1. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

2. The Clerk shall terminate any motions and deadline and close this case.


Dated:   October 7, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE